GRICE *v.* McCARTY-HOLMAN Co. *et al.*

(Division B. Nov. 23, 1931.)

[137 So. 741. No. 29602.]

Wm. Harold Cox, of Jackson, for appellant.

Clyde Hester and Flowers, Brown & Hester, all of Jackson, for appellees.

Argued orally by **W. H. Cox**, for appellant, and by Clyde Hester, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

Grice, the appellant, was plaintiff or complainant in the court below. He filed a declaration in the circuit court against W. B. McCarty, J. M. Holman, and W. H. Holman, partners, trading under the firm style and partnership name of McCarty-Holman Company, and the Jackson Jitney Jungle Stores, Incorporated, alleging that on January 1, 1926, the defendants, acting by and through W. B. McCarty, one of the partners in the McCarty-Holman Company, and president of the Jitney Jungle Stores, Inc., promised, agreed, and obligated themselves, jointly and severally, to pay plaintiff a weekly salary of twenty-five dollars per week, and further agreed and obligated themselves to pay plaintiff twenty-five per cent commission of and from all profits realized by the defendants from the operation of certain retail meat markets in their Jackson Jitney Jungle Stores in the city of Jackson, and that the said commissions were payable on the 1st of September, annually.

He alleged that the twenty-five dollars per week salary was regularly paid, and that such salary was subsequently increased to fifty dollars per week, but that the commissions had not been paid in full, and that the business, over which he superintended, during the period of suit earned forty-four thousand six hundred ninety-nine dollars and eighteen cents profit, but that the said defendants, contrary to their agreement and contract, withheld from plaintiff part of his commissions, for which he brings suit and demands judgment. The account was attached as an exhibit to the declaration, showing in general the amount claimed to be earned during each period, and the amount paid to the plaintiff thereon.

The defendants appeared in the circuit court and filed a motion to remove the cause to the chancery court on the ground that the suit involved complicated and mutual accounts, and that a jury in the circuit court would be unable, in the ordinary time limits, etc., to properly calculate the accounts. The court sustained the order and transferred the cause to the chancery court, and the proceedings were certified by the clerk to the chancery court. Thereupon the plaintiff filed a bill of complaint conformable to chancery practice, setting forth his rights, but he set forth in his bill that if the chancery court was of the opinion that the case was improperly transferred it be remanded to the circuit court for a trial before a jury. He also took exception to the action of the circuit court in transferring the cause, contending in the circuit court that it was not a proper case to be transferred to the chancery court; that the accounts were not mutual and complicated, but consisted merely of debits and credits.

On the trial in the chancery court the evidence was conflicting. Grice's (the plaintiff's) testimony sustained his contentions as to the understanding and agreement, and that by the agreement the defendants would furnish the fixtures and equipment for the operation of the meat

market as well as the floor space. The testimony of the defendants, and some of their employees, was to the effect that the fixtures for the meat market were to be partially charged to the meat market, and that the costs thereof were to be divided into three payments payable annually, and were to be charged as expenses of the meat market operating in a certain proportion named by them in their testimony. They also produced a memorandum of agreement unsigned, which set forth the terms of the alleged contract, and which sustained their contention, and they each testified that Grice agreed to this contract, and that he took copies thereof and furnished some of the managers of the different meat markets copies of such agreement.

It was further alleged that managers of each market in each separate store were to get a Commission of five per cent of the profits which would be taken from the twenty-five per cent that Grice was to receive; they were also paid by the defendants a weekly salary in addition to this commission. It was testified by the defendants and their employees that Grice had access to the books, and that statements were regularly furnished annually to him showing the charge of the fixtures, etc. The costs of the fixtures and the amount of earnings of the markets were agreed upon prior to the decision in the chancery court, but were not agreed upon at the time of the transfer of the case from the circuit court.

The chancellor held that Grice, the plaintiff, had agreed with the defendants that the fixtures were to be, in part, paid for out of the earnings of the meat markets and as a cost of doing business of such markets. He further held that as Grice had been furnished a copy of the writing containing the terms of the contract and had accepted the amounts paid thereunder for the period of his employment and until after he was discharged, he was bound by that course of dealing and not entitled to commissions.

The chancellor's decision on the testimony was on conflicting evidence, and we are unable to reverse the case on any error of proceeding in the trial of the merits.

It is argued that section 147 of the constitution has no application to this case because the suit was brought in the circuit court and was triable there and was transferred, over the objection of plaintiff, to the chancery court, and that the section only intends to cure errors of proceeding where suit is brought originally in the wrong court and such court entertains jurisdiction and tries the cause under a misapprehension of whether the cause is of common-law jurisdiction or of equitable jurisdiction.

The circuit court was of the opinion that the account was complicated and of the character that required a court of equity rather than a jury to ascertain the correct account and transferred the cause to the chancery court. We are of the opinion that we are unable, under section 147 of the constitution, to reverse the circuit judge's holding and opinion thereon. The section intends to protect a litigant from a mistake in this regard if the court to which it is transferred takes cognizance of the case and tries it accordingly. In other words, the judgment of the circuit court was that the cause was one of equitable jurisdiction. Under this section of the constitution we cannot reverse the holding thereon, because it is immaterial, in our view of this section, whether the cause was brought originally in the court of equity or whether it was transferred there by the court of law.

In the case before us we are unable to find any reversible error in the trial of the cause by the chancellor. He entertained jurisdiction and tried the case correctly so far as any errors that this court may deal with are concerned. When the circuit court decided it was an equitable cause and transferred it to the chancery court, that judgment was protected from reversal by this court

on that point. Accordingly, the judgment of the chancery court must be affirmed.

Affirmed.